IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NELSON WILFREDO RIOS ) | |
| Petitioner, ) | |
| ) | |
| ) | Criminal No. 1:09cr215 |
| ) | Civil Action No. 1:11cv42 |
| UNITED STATES OF AMERICA, ) | |
| Respondent. ) | |

F I L E D
MAR 2 2 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

<u>ORDER</u>

This prosecution for conspiracy to import five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 952, 960(a)(1) and 963, is before the Court on petitioner's motion to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255, based on the alleged ineffective assistance of his appointed counsel. For the reasons that follow, petitioner's motion must be denied in all respects.

I.

A brief recitation of the facts and procedural history to date places the matter in context. On May 14, 2009, petitioner was charged in a one-count federal indictment with conspiracy to import five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 952, 960(a)(1) and 963. Petitioner, who was represented by appointed counsel, initially entered a plea of not guilty to the charged offense and the matter proceeded to a jury trial on September 23, 2009.

The government's evidence against petitioner consisted chiefly of the testimony of several law enforcement officers and three cooperating witnesses — Brandon Dodson, Katrina Dodson and Rafael Ortiz-Gonzalez. This testimony was also corroborated by physical evidence, border crossing records, and petitioner's post-arrest admissions to law enforcement authorities. In essence, the government's evidence at trial established that in the Spring of 2006, petitioner

1

drove a 2000 Ford Expedition containing a large quantity of cocaine across the Mexican border and into the United States, eventually stopping in Tampa, Florida. Petitioner engaged in these illegal actions on behalf of a Mexican drug trafficking organization. Later that year, petitioner recruited another individual — Brandon Dodson — to drive passenger vehicles containing cocaine from Mexico into the United States on behalf of the same Mexican drug trafficking organization. Petitioner supervised Dodson during Dodson's first drug smuggling trip between December 2006 and March 2007, and also played a role in another of Dodson's drug smuggling trips during the summer of 2007.

In the course of the jury trial, petitioner, by appointed counsel, sought to introduce evidence regarding an alleged duress defense, arguing essentially that several unidentified Mexican drug dealers had threatened his personal safety and the safety of his family if he failed to follow their instructions to engage in criminal conduct. The government moved orally to preclude any evidence of duress in this instance, and a brief evidentiary hearing was held outside the presence of the jury. Following petitioner's sworn testimony and the arguments of counsel, the government's motion in limine to preclude petitioner from presenting a duress defense was granted, and the reasons underlying that ruling were later elucidated in a written order. *See United States v. Rios*, 1:09cr215 (E.D. Va. Sept. 30, 2009) (Order).[1]

---

[1] It is well-settled that in order to establish the affirmative defense of duress, "the defendant must show that he acted under a reasonable fear of an *imminent* threat of bodily harm and that he had no reasonable choice but to commit the illegal act." *United States v. King*, 879 F.2d 137, 139 (4th Cir. 1989) (emphasis in original) (citations omitted). Here, the record reflected that the alleged harm facing petitioner was never "imminent" and petitioner's involvement in the charged conspiracy "spanned many months, if not years." *United States v. Rios*, 1:09cr215 (E.D. Sept. 30, 2009) (Order). Petitioner was also unable to show that he had no reasonable legal alternative to importing drugs in this instance given that he remained in the United States for "several weeks or even months" at a time and failed to take advantage of "multiple and ample opportunities" to report the alleged threats made against him or his family members. *Id.*

2

On September 28, 2009, after the government had presented two days of evidence, petitioner pled guilty to the one-count indictment, without a written plea agreement, and the jury was accordingly excused prior to any deliberations. Sentencing was thereafter held on February 4, 2010. In the course of the sentencing proceedings, petitioner, by appointed counsel, moved for a downward departure pursuant to U.S.S.G. § 5K2.12 based on alleged coercion and duress.[2] Petitioner also objected to the probation officer's application of a three-level role enhancement pursuant to U.S.S.G. § 3B1.1(b).[3] In the end, petitioner's motion for a downward departure based on duress was denied, but his objection to the three-level role enhancement was sustained, thereby resulting in a total offense level of 34, a criminal history category of II, and a guidelines range of imprisonment of 168 to 210 months. Following the arguments of counsel and consideration of the factors set forth in 18 U.S.C. § 3553(a), petitioner was ultimately sentenced to a variant sentence of 162 months of imprisonment, to be followed by five years of supervised release.

Petitioner did not appeal his conviction or sentence to the Court of Appeals for the Fourth Circuit. Instead, petitioner, initially proceeding *pro se*, filed the instant motion to vacate, set aside or correct his sentence, pursuant to § 2255, alleging that his appointed counsel rendered ineffective assistance in the course of the proceedings. Petitioner's original motion included two discrete claims, namely (i) that his guilty plea was not knowing and voluntary, and (ii) that counsel failed to file a direct appeal despite petitioner's request that he do so. Petitioner's § 2255

---

[2] Section 5K2.12 provides, in pertinent part, that "[i]f the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward."

[3] Section 3B1.1(b) provides that "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase [the defendant's offense level] by 3 levels."

3

claims of ineffective assistance of counsel are now ripe for resolution and are addressed here.

## II.

It is well-established that a two-prong analysis applies to claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 688-89 (1984). Specifically, to prevail on such a claim, a petitioner must show, first, that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. Judicial review of counsel's performance in this context is "highly deferential." *Id.* at 689. Indeed, to establish that counsel's performance was objectively unreasonable, a petitioner must overcome the strong presumption that counsel rendered "adequate assistance and made all significant decisions in the exercise of reasonable judgment." *Id.* at 690.

If a petitioner demonstrates that counsel's performance was objectively unreasonable, *Strickland* next requires the petitioner to establish that "the deficient performance prejudiced the defense." *Id.* at 688. Specifically, in step two of the *Strickland* analysis, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A proper prejudice analysis also requires consideration of whether "the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). Thus, counsel may be deemed constitutionally ineffective only if his or her "conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

It is through the lens of these guiding principles that petitioner's claims of ineffective assistance of counsel are analyzed here.



## III.

Petitioner's first § 2255 claim is that his guilty plea was not knowing and voluntary as a result of the alleged ineffective assistance of his appointed counsel. Specifically, petitioner argues, first, that his guilty plea was the result of improper "inducements by counsel." Pet. Mot. at 5; *see also* Pet. Aff. at ¶11 (stating that "[c]ounsel induced me to sign a plea agreement stipulating to importing 5KG or more of Cocaine into the United States"). A review of the plea transcript flatly contradicts petitioner's claim in this regard. Indeed, in the course of the Rule 11 plea colloquy, petitioner explicitly denied, under oath, having been coerced or pressured by anyone into pleading guilty. The specific Rule 11 exchange on this issue was as follows:

> THE COURT: Has anyone tried to force you or pressure you or coerce you in any way to plea[d] guilty in this case?
> THE DEFENDANT: No.
> THE COURT: Are you pleading guilty, then, freely and willingly and voluntarily because you are, in fact, guilty?
> THE DEFENDANT: Yes.

Plea Tr. at 18. Absent clear and convincing evidence not presented here, petitioner is bound by his sworn declarations in this regard. *See, e.g., Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (providing that declarations made "in open court carry a strong presumption of verity" and that "the representations of the defendant . . . [at a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings"); *Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001) (holding that absent clear and convincing evidence to the contrary, a defendant is bound by his representations made during a plea colloquy) (citations omitted).

In a related argument, petitioner contends that his guilty plea was not knowing and voluntary because it was the result of the "materially erroneous advice" of counsel. Pet. Mot. at 5. Specifically, petitioner contends that his counsel "erroneously" advised him to plead guilty

notwithstanding the fact that petitioner "had a valid defense of duress that was highly probable to exonerate [petitioner]." Pet Mot. at 6. Petitioner further contends that had he received the effective assistance of counsel in this matter, he "would have insisted upon going to trial, under the lawfully accepted, Defense of Duress." *Id.* In stark contrast to petitioner's contentions in this regard, the record reflects that counsel strenuously argued in favor of allowing petitioner to present a duress defense at trial, but such a defense was ultimately precluded following an evidentiary hearing outside the presence of the jury. *See supra.* Counsel also moved at sentencing for a downward departure in petitioner's offense level based on alleged coercion and duress, pursuant to U.S.S.G. § 5K2.12, but that argument was again properly rejected. *Id.* Simply put, counsel's repeated efforts to assert a duress defense on petitioner's behalf are clearly evident throughout the record and demonstrate more than adequate representation in this case.

In sum, then, the record as a whole reflects that petitioner's guilty plea was knowing and voluntary and that counsel did not pressure or coerce petitioner to plead guilty in any respect. Nor was petitioner's guilty plea the result of any erroneous legal advice on the part of his appointed counsel, either with respect to the alleged duress defense or otherwise.[4] Petitioner is

---

[4] Although not entirely clear from the record, petitioner also appears to argue that counsel was unreasonable in failing to object to petitioner being held responsible for five kilograms or more of cocaine in this instance. *See* Pet. Mot. at 6 (stating that counsel's "failure to timely object to the stipulated drug quantity of 5KG or more of Cocaine before or during the plea proceedings was not based upon any reasonably sound trial strategy"). Petitioner's argument in this regard is again flatly contradicted by his own sworn statements made in the course of the sentencing hearing, as illustrated by the following exchange:

> THE COURT: Now, you pled guilty with respect to importing five kilograms or more of cocaine; is that correct?
> THE DEFENDANT: Yes, sir.
> THE COURT: And are you, in fact, guilty, of that offense?
> THE DEFENDANT: Yes, sir.
> THE COURT: Is there any reason why you might want to

6

therefore unable to overcome *Strickland*'s strong presumption that counsel rendered "adequate assistance and made all significant decisions in the exercise of reasonable judgment." *Strickland*, 466 U.S. at 690. Petitioner is also unable to establish that he suffered any prejudice as a result of counsel's performance in this instance. To the contrary, the record reflects that based largely on the zealous advocacy of his appointed counsel, petitioner avoided a three-level role enhancement in this case and ultimately received a variant sentence. Petitioner's § 2255 claim on this ground must accordingly be denied.

## IV.

Petitioner's second § 2255 claim is that counsel failed to file a direct appeal despite petitioner's request that he do so. It is well-settled that "[a]n attorney who fails to file an appeal after being instructed by his client to do so is per se ineffective." *United States v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000) (citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). And significantly, this is so regardless of whether petitioner may have waived his appeal rights in a plea agreement with the government or whether any direct appeal, had one been filed, had a reasonable probability of success on the merits.[5]

---

consider seeking to withdraw your plea of guilty in this case?
THE DEFENDANT: No.

Sent. Tr. at 5. In fact, the Presentence Investigation Report prepared in this matter reflects that petitioner was assigned a base offense level of 34, pursuant to 2D1.1(a)(5)(c)(3), based on the importation of at least 15 kilograms but less than 50 kilograms of cocaine. And, a review of the record as a whole reveals that this assessment was proper in all respects and counsel did not act unreasonably in failing to object to the amount of cocaine for which petitioner was ultimately held responsible in this case.

[5] *See United States v. Matthews*, 239 F. App'x 806, 807 (4th Cir. 2007) (stating that "we disagree with the district court's conclusion that counsel is not obligated to file a requested notice of appeal when a defendant waives his right to appeal pursuant to a plea agreement") (citations omitted); *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993) (holding that "a

7

Here, the initial record was sharply in dispute with respect to the question whether petitioner directed his original counsel to file a direct appeal on his behalf.[6] The claim was therefore referred to the magistrate judge, pursuant to 28 U.S.C. § 636, for an evidentiary hearing and preparation of a report and recommendation. *See Rios v. United States*, 1:09cr215 (E.D. Va. Apr. 1, 2011) (Order).[7] The magistrate judge subsequently held an evidentiary hearing, at which petitioner was represented by newly appointed counsel from the Federal Public Defender's Office. And significantly, in the course of the proceedings before the magistrate judge, it became clear that petitioner's position with respect to this particular claim had changed since the filing of his original *pro se* § 2255 motion. Specifically, it is now undisputed that petitioner eventually instructed his original counsel not to file a direct appeal in this case. Yet petitioner, with the assistance and advice of new counsel, now contends that his original counsel (i) erred in not using an interpreter in discussing the appeal process with petitioner, and (ii) erred in not

---

criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success").

[6] Petitioner's counsel, for his part, initially submitted a sworn and notarized affidavit stating that although petitioner "initially stated that he wanted to [file an appeal]," petitioner later "gave [counsel] permission to not have to file a Notice of Appeal." Doc. 59, Ex. 1 at ¶2. Petitioner, in contrast, stated in his signed and verified § 2255 petition that he specifically told counsel that he wanted to appeal his case and that effective counsel "would have filed a timely notice of appeal on [his] behalf at [his] request." Doc. 56 at 7-8. Petitioner also submitted a sworn and notarized affidavit stating, *inter alia*, that he told counsel immediately following sentencing that he wanted to file an appeal, but that "[c]ounsel took no action in filing a timely notice of appeal on [his] behalf or consulted with [him] regarding the benefits or consequences of seeking an appeal." Doc. 57 at ¶¶ 14-15.

[7] The Fourth Circuit has made clear that an evidentiary hearing is required where, as here, the parties submit competing declarations with respect to the issue whether counsel failed to file a requested appeal. *See Witherspoon*, 231 F.3d at 926-27 (holding that conflicting affidavits entitled § 2255 petitioner to an evidentiary hearing on his claim that his attorney was ineffective for failing to file an appeal); *Matthews*, 239 F. App'x at 807 (stating that "[u]nless it is clear from the pleadings, files, and records that the prisoner is not entitled to relief, § 2255 makes an evidentiary hearing in open court mandatory") (citations omitted).

8

advising petitioner that there was a possibility that a different attorney could be appointed to handle the appeal proceedings. Both petitioner and his original counsel testified in the course of the evidentiary hearing before the magistrate judge and both parties filed post-hearing supplemental briefs. Thereafter, on November 28, 2011, the magistrate judge issued a lengthy and thorough report and recommendation, specifically recommending a denial of all of the arguments raised by petitioner — both in his original motion and later in the course of the magistrate judge proceedings — concerning counsel's failure to file a direct appeal. *See Rios v. United States*, 1:09cr215 (E.D. Va. Nov. 28, 2011) (Report and Recommendation). The magistrate judge specifically concluded, *inter alia*, that petitioner's original counsel acted reasonably when advising petitioner regarding his appeal rights in English and ultimately followed petitioner's instruction not to file a direct appeal in this case. *Id.*

More than three months have passed since issuance of the magistrate judge's report and recommendation and no objections have been filed by either party. And this is not surprising, as a *de novo* review of the record confirms that the report and recommendation is correct in all respects. It is therefore appropriate to adopt the magistrate judge's report and recommendation in its entirety and deny petitioner's § 2255 claim concerning counsel's failure to file a direct appeal in this case.

V.

For the foregoing reasons, for good cause, and based on a *de novo* review of the record,

It is hereby **ORDERED** that the magistrate judge's November 28, 2011 report and recommendation is **ADOPTED** as the Court's findings and conclusions in this case.

It is further **ORDERED** that petitioner's motion to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255, is **DENIED** in all respects.

9

Should petitioner wish to appeal this Order, he must do so by filing a written notice of appeal within sixty (60) days following entry of this Order, pursuant to Rules 3 and 4, Fed. R. App. P.

It is further **ORDERED** that the Court expressly declines to issue a certificate of appealability in this case as petitioner has failed to make "a substantial showing of the denial of a constitutional right" with respect to his § 2255 claims. 28 U.S.C. § 2253(c)(2), *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (noting that to satisfy the requirements of § 2253(c), a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (quoting *Slack v. McDaniel*, 529 U.S. 474, 484 (2000)).

The Clerk is directed to send a copy of this Order to petitioner and all counsel of record and to place this matter among the ended causes.

Alexandria, VA  
March 22, 2012

/s/  
T. S. Ellis, III  
United States District Judge